**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000960
10-APR-2014
08:03 AM**

NO. CAAP-12-0000960

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOSEPH K. PACHECO, III, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(CASE NO. 3P612-119)


MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Reifurth, JJ.)

Defendant-Appellant Joseph K. Pacheco, III (**Pacheco**) appeals from the "Judgment of Conviction and Sentence" entered October 2, 2012 in the District Court of the Third Circuit[1] (**district court**). Pacheco was convicted of violating Hawaii Revised Statutes (**HRS**) § 711-1109 (Supp. 2013), cruelty to animals in the second degree.[2]

On appeal, Pacheco contends: (1) the district court abused its discretion by not allowing Pacheco to present the

---

[1] The Honorable Melvin H. Fujino presided.

[2] HRS § 711-1109 provides in relevant part:

§711-1109 Cruelty to animals in the second decree. (1) A person commits the offense of cruelty to animals in the second degree if the person intentionally, knowingly, or recklessly:

. . . .

(c) Mutilates, poisons, or <u>kills without need</u> any animal other than insects, vermin, or other pests[.]

(Emphasis added.)

testimony of three witnesses at trial, (2) the district court erred by finding Plaintiff-Appellee State of Hawai'i (**State**) disproved Pacheco's defense of self-defense, and (3) his former defense counsel provided ineffective assistance.

## I. BACKGROUND

By Complaint filed May 25, 2012, the State charged Pacheco, alleging he intentionally, knowingly or recklessly killed a dog without need on January 4, 2012. A bench trial was held on October 2, 2012.

Robert Paiva (**Paiva**), Pacheco's neighbor and owner of the deceased dog, testified he found his red-nosed pit bull shot dead just outside his property on January 4, 2012. Paiva testified that when he went to Pacheco's house and asked what happened, Pacheco said the dog "was running outside of his fence chasing the sheep, and then he chased it back down to [Paiva's] pasture and that's when he shot the dog."

Officer Wyatt Kaili-Leong (**officer**) of the Hawai'i Police Department, was the responding officer and testified that Pacheco voluntarily stated Paiva's dogs chased his sheep, he followed the dogs, and shot one when it turned and faced him. After refreshing his memory by looking at his incident report, the officer, testified Pachecho told the him that Pacheco was approximately 25 feet from the dog when he shot it.

Pacheco took the stand in his defense. Pacheco testified he raises livestock on his land. He testified about the day of the incident:

> Okay. Uh, that morning about, uh, 8:45 in the morning a dog that I had caught and tried to get Humane Society to pick up for two months was still at my place. They were -- it was barking. So I came to the door. I seen two dogs, a pitbull and a hound. Uh, the pitbull had a black collar. The hound had a orange collar on. So I looked out there. They were on -- on the sheep already.
>
> So I -- I grabbed the -- the shotgun, ran to the ATV, had to pull start the ATV, and I went out there right on 'em. I chased 'em off my property which is on that diagram and onto the road.
>
> There was some other sheep down closer to my corral. So when they -- the two dogs got on - onto the road I pursued -- proceeded to look -- check my sheep out see what the damage was. By that time the two dogs came back in again, and they were on another set of sheep attacking 'em.

> So then the -- I got onto 'em and make - make sure this time that they wasn't gonna come back in. I chased 'em out, was yelling at 'em, and I followed 'em down to the road because I knew already had sheep that was -- that was hurt and damaged, and -- and I wanted to find out who the owners was.
>
> So I followed them down to the road, and then the hound took off into the fence and the pitbull was heading that way so I turned off the ATV to call the Department of Hawaiian Homes to -- to find out whose property that was. So as I was dialing I noticed here comes the pitbull running straight at me.
>
> So I closed the phone, dropped it in my pocket. I had enough time to pick up the -- the shotgun off the ATV, eject the shell in it and took a shot. And then I called, uh, Department of Hawaiian Homes, reported the incident. Reported it to Humane Society, which I've done numerous, numerous times, any -- anything had to do with a dog out there killing animals.
>
> .  .  .  .
>
> So after I shot the dog I got off the four-wheeler. I went up to the dog to make sure he wasn't suffering. He was dead and it -- it -- it dropped right there dead.

Pacheco testified Paiva's dogs tore an ear off one of his sheep and took a chunk out of another's rear, and that he followed the dogs to discover who owned them in order collect damages. Pacheco testified the pit bull was 16 feet away when he shot it, not 25 feet:

> Sixteen feet, not twenty-five feet. I told the officer that I -- I shot the dog 25 feet away from their gate, which I have on that, uh, chart there. Twenty-five feet away from their . . . gate and then the -- but the dog was actually, uh, 16 feet from me, and his statement says the dog was four to five feet from the road. On his thing.
>
> So I don't know why, I mean, everybody on their statements got "25 feet" because I only spoke to one person. That's the officer. I told him the whole story of what happened. I did not speak to no one else about how far it was. Uh, all I said they was on my sheep. That's all I ever spoke to anybody about.

Pacheco testified he felt shooting the dog was the only alternative to being attacked by the dog because it had just been acting aggressively on his property and he did not have time to start his "pull start" ATV, before the dog would have reached him.

The State contended that at the time Pacheco shot the dog he lacked a need to kill it, but that it was a question of credibility for the court:

> [Pacheco] has stated, um, now that the dog not only turned, although his original statement to the officer was that the dog turned, um, but now that it was approaching him. However, [Pacheco] in his own testimony indicates that he was on the phone. He had time to not only close his phone but put it in his pocket, then eject his shell and then he shot the dog which leaves us the impression that perhaps the dog was not, in fact, charging but in fact he just turned to look at him.
>
> Again the [district court] is gonna have to determine whether or not it finds [Pacheco] to be a credible person, but it appears to the State that every time that we hear a rendition of the -- what [Pacheco] said that day at no point did he say, A, that his sheep had been injured and, B, um, he in any of -- in any of these places did he say that the dog was actually attacking him, only that it turned.

Pacheco's defense counsel responded that the circumstances created a need for Pacheco to kill the dog:

> Uh, Your Honor, [Pacheco] by his own testimony has shown to the [district court] that he had a need to shoot the dog which is not in -- it's not in dispute the dog was shot by, uh, the gun and [Pacheco], but he, uh, stated to the [district court] that there was a need as the dog, uh, not only had turned but had begun coming at him, and [Pacheco] just previously to this incident had seen this particular dog acting in a vicious manner toward his property.
>
> Um, [Pacheco] again did not lose sight of this dog but chased the dog off this property not once which at -- at the time he felt he had taken care of the problem and he wanted to tend to his property. But he had chased it off again, and he traveled a half a mile because he wanted to see where the dog resided basically. Who owned this dog? And he wanted to report this, uh, animal that was hurting his property. Killing, uh, hurting his property.
>
> And he did shoot the dog but we would - [Pacheco] would submit that he certainly had need and the time to close the phone and shoot was much less substantial a time than it would have been to start an ATV and flee. Um, [Pacheco] did what he needed to do, uh, at this, uh, at that date and time when confronted by a -- a -- a dangerous animal.

The district court concluded the State disproved Pacheco's two need-based defense theories, defense of property and self-defense, beyond a reasonable doubt. Regarding the defense of property, the district court reasoned that even if the dogs attacked Pacheco's sheep, the danger to his sheep was extinguished when Pacheco chased the dogs away, so no need existed at the time Pacheco shot the dog. Regarding self-defense, the court reasoned that killing the pit bull was not needed, even assuming Pacheco credibly testified the dog ran straight at him:

4

> So then we move on to whether or not the defense of [Pacheco] by the red pit -- pitbull and assuming [Pacheco's] testimony is correct regarding the red bull -- pitbull testifying [sic] the [district court] will still find that even based on [Pacheco's] testimony that he was on the phone, that he hung up the phone. He had time to put the phone in his pocket and the fact that he shoots this dog who's right outside the dog's owner's, uh, fence or gate, uh, the district court will find that the prosecutor has disproved that issue of self defense from the dog regarding [Pacheco].

The district court sentenced Pacheco to pay $1,000 in restitution, serve five days in jail and a one-year probation term. Pacheco filed a notice of appeal on November 1, 2012.

## II. STANDARD OF REVIEW

### Evidentiary Rulings

The standard of review applied to trial court admissibility decisions depends on the rule of evidence involved. See State v. West, 95 Hawai'i 452, 456, 24 P.3d 648, 652 (2001). When the application of a particular rule can yield only one correct result, we apply the right/wrong standard. See id. The appellate court reviews "the issue of relevance under the right/wrong standard of review." State v. Arakawa, 101 Hawai'i 26, 32, 61 P.3d 537, 543 (App. 2002). Hawaii Rules of Evidence (**HRE**) Rules 403 (1993) and 404 (Supp. 2013) requires a "judgment call" and we review this admissibility decision for an abuse of discretion. See State v. Richie, 88 Hawai'i 19, 37, 960 P.2d 1227, 1245 (1998).

## III. DISCUSSION

Pacheco contends the court erred by disallowing witness testimony of relevant personal character traits. HRE Rule 103(a)(2) (1993) provides that a ruling excluding evidence can only be the basis for error if "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

Pacheco's former defense counsel's offer of proof for the testimony of his wife (**Pacheco's Wife**) was inartful but adequately apprised the district court of the substance of the evidence:

> [Defense Counsel]: Your Honor, the Defense calls uh, [Pacheco's Wife] . . . .

5

> [Deputy Prosecutor]: And again the State would ask for an offer of proof.
>
> [Defense Counsel]: [Pacheco's Wife], um, is here to testify as to, um, [Pacheco's], um, typical, um, <u>manner in which he handles the situation in which loose dogs are on his property as she is his wife and is familiar with his manners and his ability to handle these situations</u>.
>
> [District Court]: So the offer is based on his conduct as how she knows him that he acted in according to how he normally acts?
>
> [Defense Counsel]: His -- <u>she would testify that [Pacheco] acts in a -- in a -- typically in these situations acts in a reasonable manner</u>.
>
> [District Court]: Court will sustain the objection if that's your offer of proof. Not gonna allow the testimony.

(Emphasis added.)

Character evidence is admissible when offered by the accused as evidence of a "pertinent trait of character" of the accused. HRE 404(a)(1). "Notwithstanding the choice of a different word . . . 'pertinent' as used in Rule 404(a)(1) is generally synonymous with the word 'relevant[.]'" <u>State v. Rabe</u>, 5 App. Haw. 251, 263, 687 P.2d 554, 562 (1984). So, if the character trait of reasonableness while dealing with loose dogs is relevant, the testimony was admissible.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401 (1993). Raising the defense of self-defense[3] makes Pacheco's reasonableness in dealing with loose dogs a fact that is of consequence to the determination of the action. <u>See</u> <u>State v. Pond</u>, 118 Hawai'i 452, 470, 193 P.3d 368, 386 (2008) (the reasonableness of a defendant's belief that the use of force was needed is determined from the point of view of a reasonable person in the defendant's position under the circumstances as the defendant subjectively believed them to be). Character evidence may be probative of whether a defendant acted reasonably. <u>See</u> <u>State v. Pascua</u>, No. 30104, (App. Mar. 7, 2011) (SDO) (character evidence probative of whether defendant had a reasonable apprehension of danger). And

---

[3] Here, Pacheco's violation of HRS § 711-1109 depends on whether he killed the dog "without need." <u>See</u> HRS § 711-1109.

since reasonableness while dealing with loose dogs tends to prove Pacheco would have only killed a loose dog if it was reasonable, i.e. needed, we conclude Pacheco's Wife's testimony was relevant and admissible.

The district court abused its discretion under HRE Rule 403 by precluding Pacheco's Wife from testifying. See Rabe, 5 Haw. App. at 264, 687 P.2d at 563 (after reviewing the trial court's admission of evidence under HRE Rule 404(a)(1), the appellate court reviews the exclusion of evidence under HRE Rule 403); see also HRE Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

Under HRE Rule 403, the determination of probative value requires an assessment of both the relevancy and need for the evidence. See State v. Sale, 110 Hawai'i 386, 394, 133 P.3d 815, 823 (App. 2006). "The need assessment involves an evaluation of three variables: 1) the relative importance of the fact to be inferred; 2) the degree to which the fact to be inferred is actually disputed; and 3) the availability and quality of other evidence tending to prove the same point." Id. The testimony was relevant, and Pacheco's credibility and the reasonableness of his conduct were important, determinative facts. Whether Pacheco acted reasonably under the circumstances was in actual dispute. Other evidence tending to prove the same point was unavailable.

Further, because the instant case was a bench trial, the dangers of unfair prejudice, confusion of the issues, and misleading the jury were mitigated, if not eliminated altogether. See State v. Antone, 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) ("where a case is tried without a jury, it is presumed that the presiding judge will have disregarded the incompetent evidence and relied upon that which was competent."). And, our review of the record reveals no basis for a conclusion that Pacheco's Wife's testimony was cumulative or offered to delay the proceeding or waste time. Consequently, we conclude the district

court abused its discretion by precluding Pacheco's Wife from testifying.

HRPP Rule 52(a) provides any "error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." "Such error, however, should not be viewed in isolation and considered purely in the abstract. It must be examined in light of the entire proceedings and given the effect to which the whole record shows it is entitled." State v. Sprattling, 99 Hawai'i 312, 320, 55 P.3d 276, 284 (2002) (internal quotation marks, citation, and brackets omitted).

Under the harmless error standard, this court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Pauline, 100 Hawai'i 356, 378, 60 P.3d 306, 328 (2002) (internal quotation marks and citation omitted). "If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." State v. Gano, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted).

Considering the entire record, we cannot conclude the exclusion of testimony from Pacheso's Wife was harmless. Here, Pacheco's credibility was at the crux of his justification defense. See State v. Lealao, 126 Hawai'i 460, 470, 272 P.3d 1227, 1237 (2012) (A defendant's credibility is at the crux of the defenses of self-defense or the defense of others; the trier-of-fact must determine whether the defendant did in fact subjectively believe the use of force was necessary). We are particularly persuaded by the lack of evidence allowed in by the district court regarding the reasonableness of Pacheco's belief that his use of force was necessary under the circumstances as he perceived them to be.

In State v. Aplaca, 74 Haw. 54, 837 P.2d 1298 (1992), the only witnesses to an alleged assault were the complaining witness (CW) and the defendant. See id., 74 Haw. at 72, 837 P.2d at 1308. The defendant admitted to colliding with the CW, so the "focal point was whether such collision was intentional or

8

reckless . . . [and] the outcome of the case depended on the credibility of [the CW and the defendant]." Id. On appeal, the defendant contended she was denied effective assistance of counsel because her trial counsel did not diligently investigate the case and as a result, failed to present witness testimony demonstrating the defendant was a peaceful and nonviolent person at the time of the incident. The Hawaiʻi Supreme Court agreed, concluding the errors substantially impaired a potentially meritorious defense because the non-proffered testimony "would have bolstered [the defendant's] credibility and related directly to whether she would have intentionally or recklessly hit another person." Id., 74 Hawaiʻi at 73, 837 P.2d at 1308.

Since Pacheco admitted to intentionally killing the dog, the focal point of his trial was whether a need had existed. And since Pacheco was the only witness, the outcome of the trial depended on his credibility. The testimony of Pacheco's Wife could have served to bolster Pacheco's credibility and related directly to whether the killing was needed, or reasonable, under the circumstances. So while "we, as an appellate court, cannot predict the exact effect" that the wrongly precluded evidence would have had on the trial court's credibility assessment regarding the circumstances as Pacheco believed them to be, "we firmly believe that such testimony could have had a direct bearing on the ultimate outcome of the case." Aplaca, 74 Haw. at 73, 837 P.2d at 1308. Because there is a reasonable possibility the error complained of might have contributed to the conviction, the district court committed reversible error.

We disagree with Pacheco's argument that there was insufficient evidence to disprove his defense of self-defense. When viewed in the light most favorable to the State, see State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998), there was sufficient evidence to disprove Pacheco's self-defense claim. See State v. Jhun, 83 Hawaiʻi 472, 483, 927 P.2d 1355, 1366 (1996).

Because we conclude the district court committed harmful error by excluding relevant evidence, we need not address Pacheco's ineffective assistance of counsel claim.[4]

## IV.  CONCLUSION

Accordingly, the "Judgment of Conviction and Sentence" entered October 2, 2012 in the District Court of the Third Circuit is vacated and this case is remanded for a new trial.

DATED:  Honolulu, Hawaiʻi, April 10, 2014.

On the briefs:

Dean T. Kauka
for Defendant-Appellant.

Linda L. Walton
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee.

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

*Lawrence M. Reifurth*

Associate Judge

---

[4]     Pacheco's current counsel failed to serve a copy of his opening brief on the counsel alleged to have been ineffective per Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(a).  Since we do not address that issue, we do not order service of the brief.  Pacheco's current counsel, however, is warned that future non-compliance with HRAP Rule 28 may result in sanctions.